[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs, the Town of Monroe (town), Edward Kwiatkoski, the Zoning Enforcement Officer (zeo) for the Town of Monroe, and the Planning and Zoning Commission of the Town of Monroe (commission), bring this action to permanently enjoin the defendants, Ronald Renz, Renz Hauling Corporation and Renz Construction Corporation (collectively, Renz), from conducting blasting activities and operating rock crushing equipment in conjunction with the operation of their nonconforming sand and gravel excavation business.
In 1973, Renz purchased a 133 acre parcel located in the Town of Monroe. This property, upon which Renz operates a sand and gravel excavation business, is located in a residential zone. The property has been used continuously for sand and gravel excavation since the 1940's. It is not disputed that its use as such constitutes a prior existing nonconforming use.
On November 20, 1975, the commission enacted zoning regulations for the excavation and removal of earth materials. These regulations provide, inter alia, that all existing sand and gravel operators had to obtain a special permit and that the CT Page 8385 of rock crushing equipment was prohibited.
On May 26, 1976, the zeo issued a cease and desist order based on Renz' failure to apply for a special excavation permit. An ensuing appeal to the superior court was settled in 1982 by way of a stipulation between the town and Renz in Renz v. MonroeZoning Board of Appeals, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 114863 (1982) (Renz I). Pursuant to the stipulation, Renz was required to apply for a special excavation permit.
An inspection conducted by the zeo in early 1990 revealed that Renz had expanded the nonconforming use by blasting rock outcroppings on the property, and by installing rock crushing equipment to process the rock into various commercial products. On April 20, 1990, Renz was served with a cease and desist order ordering him to cease the blasting and rock crushing activities. On May 18, 1990, Renz appealed to the Zoning Board of Appeals for the Town of Monroe (board). On July 5, 1990, the board voted unanimously to uphold the decision of the zeo.
Renz then appealed the board's decision to the superior court. See Renz v. Monroe Zoning Board of Appeals, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 273425 (1990) (Renz II). Renz also brought an application for a temporary injunction to prevent the Town from enforcing its zoning regulations. On August 1, 1990, the plaintiffs commenced the present action seeking a temporary and permanent injunction against Renz' operations. On August 27, 1990, the court (Thompson, J.) entered an order for temporary injunction by stipulation. The order limited the operation of the rock crushing equipment and the blasting activities, and required Renz to apply for a special excavation permit.
On February 7, 1990, the court in Renz II (Stodolink, J.) dismissed Renz' appeal. In so doing, the court held that Renz' blasting and rock processing operations constituted an improper expansion of a nonconforming use.[1]
Pursuant to the August 27, 1990 order of Judge Thompson, Renz applied to the commission for a special excavation permit. On June 7, 1991, the commission granted Renz the permit subject to 78 conditions. Renz then appealed to the superior court claiming that only certain zoning regulations CT Page 8386 applied to his nonconforming use that the conditions attached to the special permit were illegal and arbitrary. See Renz v.Town of Monroe Planning Zoning Commission, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 284788 (1991) (Renz III). On November 13, 1992, the court (McKeever, J.) ruled that the regulations contained in Article XXI of the Monroe Zoning Regulations were applicable to Renz' nonconforming use, and upheld those conditions that were authorized by the zoning regulations and which did not conflict with the terms of the stipulated judgment entered inRenz I.[2]
On May 7, 1992, Renz filed an application with the commission to obtain a permit for his rock crusher. The application was denied by the commission on September 10, 1992. Renz then appealed to the superior court on the ground that the zoning regulations did not prohibit the use of rock crushing equipment. See Renz v. Zoning Board of Appeals ofthe Town of Monroe, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 298775 (1992) (Renz IV). On June 23, 1993, the court (Sylvester, J.) dismissed the appeal.[3]
In December 1994, the current zeo, Tim Ryan, inspected the defendants' property and videotaped the defendants' rock crushing machinery. The videotape revealed that the rock crushing machinery that existed on the property in 1990 was still there. Blasting and rock crushing equipment are presently used by Renz in the operation of his sand and gravel business.
 I
Renz argues that § 117-2109P of the Monroe zoning regulations, which prohibits the use of rock crushing equipment, does not apply to his nonconforming use. Renz also argues that only those provisions of Article XXI of the zoning regulations which regulate slopes, grading, drainage and restoration apply to his nonconforming use. The plaintiffs contend that these issues were raised, briefed and argued inRenz II, Renz III, and Renz IV, and argue that the doctrines of collateral estoppel and res judicata bar Renz from relitigating these issues in the present proceeding. The court agrees with the plaintiffs. CT Page 8387
"Collateral estoppel, or issue preclusion, prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action. Ashev. Swenson, 397 U.S. 436, 445, 90 S.Ct. 1189,25 L.Ed.2d 469 (1970); State v. Hope, 215 Conn. 570, 584, 577 A.2d 1000, cert. denied, 498 U.S. 1089, 111 S.Ct. 968, 112 L.Ed.2d 1054
(1991); In re Juvenile Appeal (83-DE), 190 Conn. 310, 316,460 A.2d 1277 (1983)." Aetna Casualty Surety Co. v. Jones,220 Conn. 285, 296, 596 A.2d 414 (1991). The issues sought to be litigated in the present proceeding must be identical to the issues considered in the prior proceeding. Crochiere v.Board of Education, 227 Conn. 333, 345, 630 A.2d 1027 (1993). "`"For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment.'" Virgo v. Lyons,209 Conn. 497, 501, 551 A.2d 1243 (1988)." Aetna Casualty Surety Co. v. Jones, supra, 220 Conn. 296. "An issue is `actually litigated' if it is properly raised in the pleadings, submitted for determination, and in fact determined." State v. Ball, 226 Conn. 265, 276, 627 A.2d 892
(1993).
The issues concerning the applicability of Article XXI of the zoning regulations to Renz' property were fully litigated and decided in Renz II, Renz III, and Renz IV. Indeed, Renz II
and Renz IV involved the same parties to the present litigation. In these cases, the courts respectively held that Article XXI of the zoning regulations, including § 117-2109P, applied to Renz' nonconforming use and prohibited Renz from installing and using rock crushing equipment on his premises. Therefore, Renz is collaterally estopped from relitigating these issues.
Renz also seeks to relitigate the issue of the effect of the stipulated judgment in Renz I on the applicability of Article XXI of the Monroe zoning regulations to his nonconforming excavation operation. At trial, Renz presented parol evidence with respect to his intent in entering into the stipulation, and with respect to his subjective understanding as to the scope of the stipulation. Specifically, Renz argued that in entering into the stipulation, the parties intended that only those regulations which relate to slope, drainage, grading and restoration would apply to his nonconforming use. Renz contends that pursuant to the stipulation in Renz I
CT Page 8388 § 117-2109P of the zoning regulations, which prohibits the use of rock crushing equipment, does not apply to his nonconforming use, and therefore, he can install and use rock crushing equipment without restriction or interference from the town.
Renz' argument was rejected by the court in Renz II andRenz III. In Renz II, the court (Stodolink. J.) characterized Renz' argument as "fallacious." In Renz III, the court (McKeever, J.) held that § 117-2109P applied to Renz' operation that the stipulation only limited the commission's ability to attach conditions to Renz' special permit. Renz is collaterally estopped from relitigating the issue here.[4]
 II
The plaintiffs argue that the addition of the rock crushing equipment and the blasting of rock cliffs and outcroppings to feed the rock crusher constitute an illegal expansion of Renz' nonconforming excavation operation. Renz contends that the use of rock crushing equipment constitutes improved instrumentality and a modernization of his excavation operation. General Statutes § 8-2 provides in pertinent part that zoning "regulations shall not prohibit the continuance of any nonconforming use, building or structure existing at the time of the adoption of such regulations." See O G Industries, Inc. v. Planning Zoning Commission,232 Conn. 419, 430, 655 A.2d 1121 (1995). Thus, "[w]here a nonconformity exists, it is a vested right which adheres to the land itself." Petruzzi v. Zoning Board of Appeals,176 Conn. 479, 483, 408 A.2d 243 (1979).
Nevertheless, "`[t]he rule concerning the continuance of a nonconforming use protects the right of a user to continue only the same use of the property as it existed before the date of the adoption of the zoning regulations.'" Karls v.Alexandra Realty Corporation, 179 Conn. 390, 398, 426 A.2d 784
(1980).
"`It is a general principle in zoning that nonconforming uses should be abolished or reduced to conformity as quickly as the fair interest of the parties will permit. In no case should they be allowed to increase.' Salerni v. Scheuy, 140 Conn. 566,570, 102 A.2d 528 (1954); see also Essex Leasing, Inc. v.Zoning Board of Appeals, 206 Conn. 595, 607, 539 A.2d 101
CT Page 8389 (1988) (the goal of zoning is to abolish nonconforming uses as quickly as justice will tolerate). While `a mere increase in the amount of business done pursuant to a nonconforming use is not an illegal expansion of the original use,' a `change in the character of a use . . . does constitute an unlawful extension. . . .' Helicopter Associates, Inc. v. Stamford,201 Conn. 700, 716, 519 A.2d 49 (1986). In Zachs v. ZoningBoard of Appeals, 218 Conn. 324, 332, 589 A.2d 351 (1991), th[e] [supreme] court identified three factors to be used in determining whether an activity is within the scope of a nonconforming use: `(1) the extent to which the current use reflects the nature and purpose of the original use; (2) any differences in the character, nature and kind of use involved; and (3) any substantial difference in effect upon the neighborhood resulting from differences in the activities conducted on the property." Connecticut Resources RecoveryAuthority v. Planning Zoning Commission, 225 Conn. 731, 740,626 A.2d 705 (1993).
"The right to continue a nonconforming use does not include the right to expand it through the addition of a new product or service." 1 Anderson, American Law of Zoning 3d, § 6.49, p. 593. "The introduction of more efficient and modern equipment to carry on a nonconforming sand and gravel excavation business can be continued if it pre-existed the zoning regulation, but there is an illegal extension or expansion of the nonconforming use when the nature of the business is changed, or another related business activity is added to the site." Fuller, Land Use Law and Practice § 4.24, p. 80. In Connecticut Sand Stone Corporation v. ZoningBoard of Appeals, 150 Conn. 439, 443, 190 A.2d 594 (1963), the supreme court held that the addition of ready-mix concrete equipment to a nonconforming sand and gravel operation constituted a departure from the original nature and purpose of the plaintiff's nonconforming use. In DeFelice v. ZoningBoard of Appeals, 130 Conn. 156, 162, 32 A.2d 635 (1943), the supreme court held that the addition of a wet sand classifier was an illegal expansion of a nonconforming use. SeeParamount Rock Co. v. County of San Diego, 180 Cal.App.2d 217,4 Cal.Rptr. 317 (1960) (installation of rock crusher was an illegal expansion of a nonconforming premixed concrete business); City Council of St. George's County v. E.L.Gardner, 293 Md. 259, 443 A.2d 114 (1982) (addition of sand and gravel wet processing facility was an illegal expansion of a nonconforming surface mining sand and gravel operation); CT Page 8390First Crestwood Corp. v. Building Inspector, 326 N.E.2d 363
(Mass.App. 1975) (addition of stone crusher constituted an impermissible expansion of nonconforming quarry). But seeHawkins v. Talbot, 80 N.W.2d 863 (Minn. 1957) (use of a rock crusher not an impermissible expansion of a nonconforming gravel pit).
In Renz II, the court (Stodolink, J.) after examining the record and hearing testimony, concluded that: "The original nonconforming use in this case was the excavation of sand and `bank run' gravel in its natural state and selling same. The machinery used was excavating machinery.
"The present use of the property is to blast rock faces on the property, place the blasted rock into a rock crusher, screen the crushed rock into various sizes, stock pile same and then sell it. This process includes blasting of sufficient strength and operation of machinery that generates so much noise that it has caused residents in the area . . . to file complaints as to these activities.
"It is the court's opinion that [Renz'] second claim . . . that the rock crushing operation is nothing more than a more efficient means of implementing a valid nonconforming excavation operation cannot be sustained. [Renz] has gone well beyond the nature and purpose of the original use; has substantially changed the character, nature and kind of use; and has created a substantial difference in effect upon the neighborhood. . . ."
Renz' nonconforming excavation operation involves the use of trucks and earth moving equipment (i.e., power shovels, bulldozers, graders and more) to extract naturally occurring sand and gravel from the premises. The rock crushing equipment (and the use of blasting to create material for the rock crusher), which was placed on the property in 1989, constitutes a change in the nature and purpose of the original use. Renz has depleted the naturally occurring gravel on the property and must now use blasting and rock crushing to create a commercially acceptable rock product. Thus, the rock crushing equipment is not an improved instrumentality which allows for a modern, efficient piece of equipment to replace an older, inefficient piece of equipment. The rock crushing equipment and the blasting constitute a change in the nature and character of the original use. To allow such an expansion CT Page 8391 would violate the principle that a nonconforming use should be reduced to conformity as quickly as the fair interest of the parties will permit. Helbig v. Zoning Commission,185 Conn. 294, 306, 440 A.2d 940 (1981).
Renz' blasting and rock crushing activities have a substantial and deleterious effect on the surrounding neighborhood. The court finds that the use of rock crushing equipment constitutes an impermissible expansion of a nonconforming use.
 III
The plaintiffs seek both prohibitory and mandatory injunctive relief. "A prohibitory injunction is an order of the court restraining a party from the commission of an act. A mandatory injunction, on the other hand, is a court order commanding a party to perform an act. Black's Law Dictionary (6th Ed. 1990); H. McClintock, Principles of Equity (2d Ed. 1948) § 15, p. 32." Tomasso Bros., Inc. v. October Twenty-Four,Inc., 230 Conn. 641, 652, 646 A.2d 133 (1994).
"In seeking an injunction pursuant to [General Statutes] § 8-12[5], the town is relieved of the normal burden of proving irreparable harm and the lack of an adequate remedy at law because § 8-12 by implication assumes that no adequate alternative remedy exists and that the injury was irreparable. Conservation Commission v. Price, 193 Conn. 414,429, 479 A.2d 187 (1984). The town need prove only that the statute or ordinances were violated. Id., 430." Gelinas v.West Hartford, 225 Conn. 575, 588, 626 A.2d 259 (1993); see also Fisette v. DiPietro, 28 Conn. App. 379, 388, 611 A.2d 417
(1992); Greenwich v. Kristoff, 2 Conn. App. 515, 521,481 A.2d 77, cert. denied, 194 Conn. 807, 483 A.2d 275 (1984); Johnsonv. Murzyn, 1 Conn. App. 176, 180, 469 A.2d 1227, cert. denied,192 Conn. 802, 471 A.2d 244 (1984); Crabtree v. Van Hise,39 Conn. Sup. 334, 337-38, 464 A.2d 865 (App. Sess. 1983).
Nevertheless, "[e]ven in an action brought by a zoning enforcement officer to require conformity with the zoning regulations, the granting of injunctive relief, which must be compatible with the equities of the case, rests within the trial court's sound discretion. Dupuis v. Submarine BaseCredit Union, Inc., [170 Conn. 344, 356, 365 A.2d 1093
(1976)]. Those equities should take into account the gravity CT Page 8392 and wilfulness of the violation, as well as the potential harm to the defendants. Berin v. Olson, 183 Conn. 337, 343,439 A.2d 357 (1981)." Johnson v. Murzyn, supra, 1 Conn. App. 183. "The proof of violations does not . . . obligate the court mechanically to grant the requested injunction for every violation. [Conservation Commission v. Price, supra, 193 Conn. 430]."Gelinas v. West Hartford, supra, 225 Conn. 588; see and compare Crabtree v. Coyle, 19 Conn. App. 208, 211,561 A.2d 455 (1989).
Here, Renz is clearly in violation of § 117-2109P of the zoning regulations, which prohibits the use of rock crushing equipment in conjunction with excavation operations. Also, by expanding his nonconforming use to include the use of rock crushing equipment, Renz has violated §§ 117-200 and 117-201 of the zoning regulations, which prohibit the illegal expansion of a nonconforming use.[6]
While the use of blasting has a deleterious effect on the surrounding residential neighborhood, Renz makes a compelling argument that such blasting does not constitute a violation of the zoning regulations since § 117-2109M, Renz argues, anticipates that blasting may be conducted in conjunction with excavation operations. Section 117-2109M, Renz observes, only limits the times that blasting may be conducted, and does not purport to restrict the purpose for the blasting.[7]
Nevertheless, in Renz III, the court (McKeever, J.) upheld conditions which prohibit the use of blasting for purposes of supplying rock material for use in rock crushing machinery.
In balancing the equities of the case, the court observes that Renz has violated the zoning regulations and has disregarded an order to cease and desist from his rock crushing activities. While Renz argues that he will suffer financial harm as a result of an injunction, it is also true that litigation between the plaintiffs and Renz has dragged on for a number of years, during which Renz has continued to operate in violation of both the zoning regulations and the cease and desist order. Obviously, Renz has obtained a benefit from operating the rock crushing equipment from 1989 to the present date, because were it not for the addition of the rock crushing equipment, Renz would have long since depleted the naturally occurring gravel deposits on his property. CT Page 8393
Renz argues that his violation of the zoning regulations may be overlooked and that the plaintiffs should be estopped from enforcing the regulations because the plaintiffs have consciously discriminated against Renz in their enforcement of the regulations that pertain to the use of rock crushing equipment in the town of Monroe.
"`[F]ailure to comply with zoning ordinances cannot be justified by the existence of other violations unless it is shown that a pattern of discrimination has been consciously practiced by the municipality. Bianco v. Darien [157 Conn. 548,556, 254 A.2d 898 (1969); . . . 1 Yokley, Zoning Law 
Practice (3d Ed.) § 10-8, p. 447.' Carini v. Zoning Board ofAppeals, 164 Conn. 169, 174, 319 A.2d 390 (1972), cert. denied, 414 U.S. 831, 94 S.Ct. 64, 38 L.Ed.2d 66 (1973)." (Emphasis added.) Chaplin v. Balkus, 189 Conn. 445, 448,456 A.2d 286 (1983).
"As our case law makes clear, the defendants bore a substantial burden of proof in asserting the defense of municipal estoppel." Dornfried v. October Twenty-Four, Inc.,230 Conn. 622, 636, 646 A.2d 772 (1994). Renz points to a number of instances in which the plaintiffs have allowed rock crushing equipment to be used in the town of Monroe in conjunction with excavations, allegedly pursuant to "illegal use waivers" granted by the board.[8] Upon review of the evidence, with the exception of the "Dalling" excavation, the use waivers were granted in conjunction with the development of commercial buildings in commercial zones, and the rock crushing equipment was used for site preparation and development. Thus, these uses of rock crushing equipment were all for limited durations, and subject to other restrictions. In contrast, Renz' use of rock crushing equipment is in conjunction with an ongoing commercial excavation conducted for the purpose of producing a commercial rock product. Furthermore, Renz' operation is located in a residential zone. Even if, as Renz argues, use waivers are prohibited by § 117-3003B and that one of the recipients of a use waiver violated the conditions attached to the waiver (i.e., in connection with the "Sippin" project) this does not prove a pattern of conscious discrimination on the part of the plaintiffs.
In seeking injunctive relief against Renz, the plaintiffs request: (1) that all excavation activity should cease on Renz' property until the special permit, as modified by Judge CT Page 8394 McKeever in Renz III, is filed with the Town, and until Renz files the requisite restoration bond; (2) that Renz should be permanently enjoined from using rock crushing equipment and blasting rock face because these activities constitute a violation of the zoning regulations and an illegal expansion of a nonconforming use; and (3) that Renz should be enjoined from blasting to produce a commercial rock product (i.e., blasting rock and removing the material off-site for crushing and processing).
Renz argues that the first request for injunctive relief should be denied because the plaintiffs have not modified the special permit (and the conditions appended thereto) to conform to Judge McKeever's decision in Renz III, and because the plaintiffs have not calculated a restoration bond. As observed by the court in Renz III, Renz applied to the commission for a special excavation permit on October 21, 1990. On June 7, 1991, the commission issued Renz a special permit subject to seventy-eight conditions. On November 17, 1992, the court rendered a decision upholding most of the conditions, and either modifying or striking some of the conditions on the ground that they were not authorized by the applicable zoning regulations or in violation of the terms of the stipulated judgment in Renz I. Subsequently, Judge McKeever denied Renz' motion to reargue and the appellate court denied Renz' petition for certification to appeal. Thus, a modified version of the special permit has been in effect since the court's decision in Renz III.
While Renz is in violation of both § 117-2109P of the zoning regulations and that portion of the special excavation permit which pertains to blasting and the use of rock crushing equipment, these violations do not warrant enjoining Renz' entire operation. Such an overly broad injunction would improperly deprive Renz of his protected right to engage in certain permitted excavation activities as a legal nonconforming use. With respect to the dispute over the restoration bond — the plaintiffs claim that Renz never filed a bond and Renz contends that the plaintiffs never calculated a bond — the parties' differences do not warrant enjoining Renz' entire operation. The obvious solution is for the plaintiffs to calculate a bond amount forthwith. If Renz should fail to post the bond, then that failure should be addressed in a subsequent proceeding. CT Page 8395
With respect to the plaintiffs' second request, in which the plaintiffs seek to permanently enjoin Renz from using rock crushing equipment and using blasting to supply such equipment, it is clear that Renz' use of rock crushing equipment violates the applicable zoning regulations, and that blasting for purposes of supplying the rock crusher violates the conditions of Renz' special permit. Furthermore, the equities of the case favor the plaintiffs. The court permanently enjoins the defendants from using a rock crusher and from blasting rock to supply the rock crusher, except as expressly authorized in writing by the zoning enforcement officer to remedy unstable or unsafe slopes or rock cliffs.
 IV
With respect to fines, General Statutes § 8-12 provides in relevant part that: "The owner or agent of any building or premises where a violation of any provision of [the zoning regulations] has been committed or exists . . . shall be fined not less than ten nor more than one hundred dollars for each day that such violation continues; but, if the offense is wilful, the person convicted thereof shall be fined not less than one hundred dollars nor more than two hundred and fifty dollars for each day that such violation continues. . . ."
A criminal prosecution is a predicate for the imposition of fines for a wilful violation of the zoning regulations. Gelinasv. West Hartford, supra, 225 Conn. 593. The plaintiffs ask this court to impose a civil fine on Renz in the amount of $100.00 per day for the period from January 1, 1990 to August 27, 1990 (the date that Judge Thompson granted a temporary injunction in the present case), and from February 7, 1992 (the date of Judge Stodolink's decision in Renz II) to the present date. Because of the court's other financial awards, a civil fine is not appropriate.
The penalty provision of § 8-12 provides that: "Any person who, having been served with an order to discontinue any such violation, fails to comply with such order within ten days after such service, or having been served with a cease and desist order with respect to a violation involving grading of land, removal of earth or soil erosion and sediment control, fails to comply with such order immediately, or continues to violate any provision of the regulations . . . shall be subject to a civil penalty not to exceed two thousand five hundred dollars, payable CT Page 8396 the treasurer of the municipality." The plaintiffs ask this court to fine Renz in the amount of $2,500.00 for violating the cease and desist order that was issued on April 20, 1990. That request is granted.
With respect to attorney's fees, General Statutes § 8-12
provides that "[i]f the court renders judgment for such municipality and finds that the violation was wilful, the courtshall allow such municipality its costs, together with reasonable attorney's fees . . . ." (Emphasis added.) The violation was wilful. It would be inequitable for the taxpayer to bear the expense of legally remedying the defendants, violation.
The plaintiffs seek attorneys fees in the amount of $26,391.00 based on an affidavit and attached itemized bills dating up to eight months prior to the trial of this action. The court has carefully scrutinized the plaintiffs, attorneys' itemized bill for services rendered in light of Rule 1.5 of the Rules of Professional Conduct and Browing v. Peyton,123 F.R.D. 75, 78 (S.D.N.Y. 1988). The hourly rates charged for partners' time and associates time are reasonable. Based on the itemized bills from 1990 to 1994, as to which the court has made adjustments, the time spent at trial, and the time reasonably ascribed to the preparation of plaintiffs, post-trial briefs; see Appliances, Inc. v. Yost, 186 Conn. 673, 680, 443 A.2d 486
(1982); the plaintiffs are awarded attorneys fees of $25,000.00.
To summarize, the court permanently enjoins the defendants from using a rock crusher and from blasting rock to supply the rock crusher, except as expressly authorized in writing by the zoning enforcement officer to remedy unstable or unsafe slopes or rock cliffs. A civil penalty in the amount of $2,500.00 is imposed on the defendants. The plaintiffs are awarded attorneys fees in the amount of $25,000.00.
BY THE COURT
Levin, J.