[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO DISMISS
The defendants, the City of New Haven (city) and the City of New Haven Board of Education (collectively, defendants) make a motion, pursuant to Practice Book §§ 10-30 and 10-31, to dismiss the plaintiff's application for injunctive relief for lack of subject matter jurisdiction. The plaintiff, Hill/City Point Neighborhood Action Group, is an unincorporated association comprised mostly of residents, as well as architectural historians, preservationists and concerned citizens. The group was organized for the purpose of preventing the defendants from demolishing the "Saint Peter's Complex" (property), which consists of five buildings: Saint Peter's Parish Hall, Saint Peter's Rectory, Saint Peter's Church, Saint Peter's School, and Saint Peter's Convent. CT Page 5767
The facts are not disputed in this case. [The city is the record owner of the property, and has planned its demolition for the construction of a 500 student Arts Magnet Middle School on the property's site.
John W. Shannahan (Shannahan) testified that he is both the State Historic Preservation Officer, a federal appointee, who chairs a 10-member State Historic Preservation Board (board) appointed by himself, and the Director of the 12-member Connecticut Historical Commission appointed by the governor. On February 2, 2000, Shannahan issued a letter to John DeStefano, Jr. (mayor), mayor of New Haven, informing him that the commission, at its meeting on that date, had listed the property on the State's Register of Historic Places. Jan Cunningham, National Register consultant, and Anstress Farwell, architectural historian, jointly prepared a draft version of National Register of Historic Places Registration Form, dated March 8, 2000, reviewed by John Herzan, National Register Coordinator.
On February 17, 2000, Shannahan wrote to the mayor, informing him that "[i]n response to a request that the State Historic Preservation Office evaluate the [property] for National Register study, the State Historic Preservation Officer has approved a historical investigation and preparation of a National Register of Historic Places inventory/nomination form for this property on February 16, 2000." The letter stated further that "[t]he State Historic Preservation Officer's approval of a National Register study for this property signifies that the property may meet the criteria of the National Register of Historic Places program." The letter further informed the mayor that as the owner of the property the city may appeal the preservation officer's decision "within 30 days of notification," requesting that the "property be submitted to the State Historic Preservation Board for final determination of National Register status."
On March 16, 2000, the mayor wrote two letters to Shannahan, in response to his letter of February 17, informing him that the letters constituted the city's formal objection and appeal, respectively, regarding Shannahan's approval of the National Register study of the property.
On March 20, 2000, Shannahan wrote back, informing the mayor that he had placed the city's appeal "on the State Historic Preservation Board's agenda on June 8, 2000," the board's next scheduled meeting open to the public. The letter stated that the board would use the mayor's comments, contained in his letter of March 16, "to evaluate whether or not the property is eligible for National Register study."
On March 23, 2000, in response to "concerned citizens" report that the CT Page 5768 city was planning imminent demolition of the property, Shannahan wrote again to the mayor, reminding him that "per that request [to appeal Shannahan's approval], and in accordance with the [Connecticut Historical] Commission's Procedural Requirements for the National Register Nomination process, I have placed the appeal on the Board's agenda for that meeting, which is now a matter of public record." The letter provided that the process of recommending this resource to the National Register has been formally initiated in the public forum.
It is undisputed that the scheduled board meeting on June 8 is only to resolve the city's appeal of Shannahan's approval of the National Register study for the property. If the board sustains Shannahan's decision, the board must subsequently vote whether to recommend the property to the National Park Services, Department of the Interior, for listing on the National Register. There are two separate and distinct steps here, one for the approval of the study, the other for the nomination.
The defendants however, planned for an imminent demolition of the property. On April 18, 2000, pursuant to the Environmental Protection Act, General Statutes §§ 22a-14, et seq., the plaintiff applied to the Superior Court, Judicial District of New Haven at New Haven, for an immediate temporary injunction to prevent the city's demolition of the property. On the same date, the court, Pittman, J., granted the temporary injunction order, barring the defendants from demolishing or weakening the property until further order of the court and pending hearing and further determination of the plaintiff's claims.
The defendant filed the present motion to dismiss the injunctive relief on April 25, 2000, supported by a memorandum of law. The court held a hearing on May 3 and 4, 2000, to hear the parties' argument regarding the motion to dismiss. The plaintiff submitted its additional memorandum of law in opposition to the motion at the hearing on May 3. Shannahan testified on behalf of the plaintiff on May 4, explaining the procedure of the historic preservation program.
 DISCUSSION
Practice Book § 10-30 provides, in pertinent part: "Any defendant, wishing to contest the court's jurisdiction, may do so even after having entered a general appearance, but must do so by filing a motion to dismiss within thirty days of the filing of an appearance." Practice Book § 10-31(a) provides, in pertinent part: "The motion to dismiss shall be used to assert (1) lack of jurisdiction over the subject matter . . . This motion shall always be filed with a supporting memorandum of law, and where appropriate, with supporting affidavits as to facts not CT Page 5769 apparent on the record."
"Jurisdiction of the subject-matter is the power [of the court] to hear and determine cases of the general class to which the proceedings in question belong." (Internal quotation marks omitted.) Doe v. Roe,246 Conn. 652, 661, 717 A.2d 706 (1998). "A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . ." Taft v. Wheelabrator Putnam, Inc., 55 Conn. App. 359,362, ___ A.2d ___ (1999). "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiffcannot as a matter of law and fact state a cause of action that should be heard by the court." (Emphasis in original.) Gurliacci v. Mayer,218 Conn. 531, 544, 590 A.2d 914 (1991). "[A] claim that [the] court lacks subject matter jurisdiction [may be raised] at any time." (Internal quotation marks omitted.) Dowling v. Slotnik, 244 Conn. 781,787, 712 A.2d 396 (1998). "[O]nce the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is presented . . . and the court must fully resolve it before proceeding further with the case." (Internal quotation marks omitted.) Figueroa v.C S Ball Building, 237 Conn. 1, 4. 675 A.2d 845 (1996)
"In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." Pamela B. v.Vent, 244 Conn. 296, 308, 709 A.2d 1089 (1998).
The defendants argue that the property falls outside the scope of General Statutes §§ 22a-16 and 22a-19a under which the plaintiff seeks relief, therefore the court lacks jurisdiction over the subject matter. The plaintiff brings this action pursuant to the Connecticut Environmental Protection Act, General Statutes §§ 22a-14 through 22a-20. Section 22a-19a provides that any person may bring an application for declaratory and equitable relief under § 22a-16 to protect certain types of "historic structures and landmarks":
 The provisions of sections 22a-15 to 22a-19, inclusive, shall be applicable to the unreasonable destruction of historic structures and landmarks of the state, which shall be those properties (1) listed or under consideration for listing as individual units on the National Register of Historic Places (16 U.S.C. § 470a, as amended) or (2) which are a part of a district listed or under consideration for listing on said national register and which have been determined by the State Historic Preservation Board to CT Page 5770 contribute to the historic significance of such district. If the plaintiff in any such action cannot make a prima facie showing that the conduct of the defendant, acting alone or in combination with others, has or is likely unreasonably to destroy the public trust in such historic structures or landmarks, the court shall tax all costs for the action to the plaintiff.
General Statutes § 22a-19a.
It is not disputed that the property is not yet listed in the National Register or is a part of a district listed in the National Register. The issue is how to construe the statutory phrase "under consideration for listing" on the National Register, specifically, whether the property is at present "under consideration for listing." If the plaintiff action is statutorily "under consideration for listing," then the plaintiff's action for injunctive relief falls within the scope of the statute and the court clearly has jurisdiction over the subject matter of the action for injunctive relief. If it is not, then the plaintiff would have no standing to bring the injunctive relief and the court would have no jurisdiction over the subject matter.
The defendants argue that the property is merely under consideration for study for possible inclusion on the National Register and has not reached the statutory stage of "under consideration for listing" on the National Register, as provided in § 22a-19a. For support of their argument, the defendants rely on a 1984 opinion by the then state Attorney General, Joseph I. Lieberman, issued in response to an inquiry by Shannahan regarding the construction of the newly enacted § 22a-19a. According to the opinion, the statutory period of "under consideration for listing" commences with "the notification by the State Historic Preservation Officer, of the owner, the applicable chief local officer, and, in the case of certified local government, the local historic preservation commission, that the property is scheduled for consideration by the State Historic Preservation Board for nomination to the Secretary of the Interior for inclusion on the National Register. The period ends with date upon which the property is included on the National Register or the date upon which the statutory process for nomination concludes without inclusion of the property on the National Register." Opinions, Conn. Atty. Gen. No. 84-80 (June 28, 1984), pp. 292, 296-97, cited in Burton v. Dillman, 27 Conn. App. 479, 481, 607 A.2d 447
(1992).
It is not disputed that in this case the state preservation officer or the state preservation board have not yet reached the second step of a CT Page 5771 decision to recommend the property to the National Park Services for inclusion on the National Register. It is not disputed either that at this stage there is no notification by the officer that the board has scheduled a meeting to decide whether to recommend the property for listing on the National Register. Because the city has objected to and appealed Shannahan's approval for study, the board must resolve the appeal before it can notify the interested parties for the next step of recommendation. Therefore, the defendants argue that the plaintiff's action for injunctive relief is not yet ripe because the property is not yet "under consideration for listing" under § 22a-19a.
The plaintiff argues that the attorney general's opinion is wrong for two reasons. First, the plaintiff cites two Superior Court cases to show that the judges had considered the issue and taken a position contrary to the attorney general's opinion. Second, the plaintiff argues that a literal adherence to the opinion wording would lead to an anomalous result: any owner of a potential historic property, here the city, could easily moot the recommendation process by appealing the approval for study in order to buy time to destroy the property in the interim before the board has a chance to resolve the appeal and proceed with the recommendation process.
In the first case cited by the plaintiff, Warner v. Norwich, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 292615 (May 23, 1984, Aspell, J.), the court remarked: "It appeared that §§ 22a-lb, 22a-18, and 22a-19a (1983) are designed to . . . allow any person to seek equitable relief to prevent unreasonable destruction of an historic structure, if that structure meets the requirements of §22a-19a. The record indicated the State Historic Preservation Officer has approved an historical investigation of the Armory as well as preparation of forms to be submitted to the National Register of Historic Places. Therefore, in light of [Crabtree v. Van Hise,39 Conn. Sup. 334, 464 A.2d 865 (App. Sess 1983)],[1] plaintiffs only have to prove violation of the statute." The plaintiff argues thatWarner v. Norwich implies that the approval for study by the preservation officer and the preparation of National Register forms are sufficient to show that a property is statutorily "under consideration for listing" on the National Register. The plaintiff here argues that the court ruling there clearly implies that the plaintiffs at the stage of their application for listing of the property on the National Register had standing to show violation of § 22a-19a.[2]
The other case cited by the plaintiff, Kennedy v. Wallingford,
Superior Court, judicial district of New Haven at New Haven, Docket No. 242036 (November 13, 1985, Fracasse, J.),[3] The issue before the court on the November 13, 1985 hearing was whether to dissolve an CT Page 5772 injunction against the defendants, the town of Wallingford as the record owner of a historic house, known as the Taber House, the library association as the lessee of the property, and two individual defendants who entered into a contract with the town to purchase the house. Under the contract, the two individual buyers agreed to dismantle the house, remove its parts to the town of Rocky Hill, and reassemble them there. They agreed to maintain the architectural integrity of the house in its reconstruction and restoration. Under these circumstances, the court ruled that "the removal of the Taber House from its site, its dismantling, the refurbishing of its various parts, its transportation from Wallingford to Rocky Hill, its restoration to its new location is not a destruction of the Taber House, is not a destruction of a historic structure and landmark, within the meaning of 22a-19a." (Transcript, p. 10.) There was no need, therefore, for the court to issue a permanent injunction order and the court dissolved a temporary restraining order against the dismantling of the house. (Id., p. 11.)
In that case however, the court did not question the standing of the plaintiffs. The court remarked that because "there does not exist any administrative and regulatory procedure that is adequate for the protection of the rights of the plaintiffs as claimed in this action," "citizens of the State of Connecticut . . . have been given statutory standing to bring action of this nature . . . therefore the matter is properly before this Court." (Id., p. 2.) The court noted that the plaintiffs there had presented to the state historic preservation commission an application that the Taber House be considered for nomination to the National Register, and that the commission had accepted the application and decided to submit the application for study on or about October 16, 1985. (Id., pp. 7-8.) It was at this point in time that the plaintiffs instituted the action for a temporary and permanent injunctive relief. "The Court finds that at this point the Taber House is a property which is under consideration for listing on the National Register of Historic Places, as those words are used under Section 22a-19a of the Connecticut General Statutes." (Id.) While the court's ruling may be taken as to mean that only the board's completion of the study constitutes the commencement of the statutory "under consideration for listing" period, the context of the court's decision makes it clear that the plaintiffs in that case must have, and did have, standing to bring action under § 22a-19a in October, 1995, when the application for listing was still under study by the board, and obtained a temporary injunction order against the dismantling of the house. The court ultimately ruled that the plaintiffs failed to show that the relocation of the property constituted unreasonable destruction of the house and therefore the court dissolved the temporary restraining order the plaintiffs obtained while their application was still "under study." CT Page 5773
The plaintiff cites a third case to support its argument that it has standing to seek injunctive relief under § 22a-19a. See ConnecticutHistorical Commission v. Capitol Center, Superior Court, judicial district of Hartford at Hartford, Docket No. 587417 (May 11, 1999,Satter, J.) (24 Conn.L.Rptr. 498),
The fact that the building in the Capitol Center case was already listed on the National Register at the time of the action distinguishes that case from the case at bar and cautions the applicability of the holding of Capitol Center. However, even though the fact pattern is quite different between that case and the case at bar, the court's view there that the imminent demolition of the building was sufficient to invoke §§ 22a-16 and 22a-19a lends some support to the plaintiff in this case.
This court agrees with the implicit holding in Warner v. Norwich andKennedy v. Wallingford that a plaintiff has standing to bring an action for injunctive relief where the state preservation officer has approved the study for listing on the National Register and the plaintiff has submitted forms for listing on the National Register. The statutory language "under consideration for listing" on the National Register is broad enough to embrace an "under consideration for study" period as an integral prelude to the "under consideration for nomination" period. SeeManchester Environmental Coalition v. Stockton, 184 Conn. 51, 57,441 A.2d 68 (1981) (the Environmental Protection Act, General Statutes §§ 22a-14 through 22a-20, is "remedial in nature and should be liberally construed to accomplish [its] purpose"). The two steps of study and nomination are within the same process of "under consideration for listing."
The position taken by the court here resolves only the challenge to its jurisdiction over the subject matter of the case. The court does not hold that the plaintiff has shown a prima facie case of unreasonable destruction of a historic site or that the defendants are hereby permanently enjoined from demolishing the property. The plaintiff must first make a prima facie showing that the conduct of the defendants is reasonably likely to unreasonably destroy a historic resource. See General Statutes § 22a-17; Manchester Environmental Coalition v.Stockton, supra, 184 Conn. 57-58. "Once a prima facie case is shown, the burden of proof shifts to the defendant. Under § 22a-17, `the defendant may rebut the prima facie showing by the submission of evidence to the contrary." Manchester Environmental Coalition v.Stockton, supra, 184 Conn. 60. "In addition to rebutting the plaintiff's prima facie case, the defendants may also prove, `by way of an affirmative defense, that, considering all relevant surrounding circumstances and factors, there is no feasible and prudent alternative CT Page 5774 to the defendants' conduct . . . General Statutes § 22a-17." Id., 61. The state preservation officer's approval and the preservation board's scheduled meeting to resolve the defendants' appeal do not bar the defendants from proceeding to prevail in a trial on the merits of their demolition plan.
The court holds, therefore, that the statutory "under consideration for listing" period has begun in this case and the court has jurisdiction over the subject matter of this action for injunctive relief. Motion to Dismiss is denied.
Frank S. Meadow, J.T.R.